FILED

2022 Jan-05 PM 02:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| DARLA R. MOORE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  5:21-cv-00130-HNJ |
| | ) | |
| HUNTSVILLE REHABILITATION | ) | |
| FOUNDATION, INC. d/b/a | ) | |
| Phoenix, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this Title VII retaliation case, Defendant Huntsville Rehabilitation Foundation, Inc. d/b/a Phoenix ("Phoenix") filed a motion to dismiss Plaintiff Darla Moore's Amended Complaint (Doc. 10), and Moore filed a motion for leave to further amend her Amended Complaint.  (Doc. 21).  As explicated herein, allowing Moore to further amend her Amended Complaint would constitute an exercise in futility, and collateral estoppel bars the existing retaliation claim in Moore's Amended Complaint. Therefore, the court will deny Moore's motion for leave to amend and grant Phoenix's motion to dismiss.

## ALLEGATIONS OF PLAINTIFF'S AMENDED COMPLAINT

Phoenix employs Moore.  (Doc. 3, ¶¶ 12-13).  Moore alleges a team leader sexually harassed her, leading her to file a charge of discrimination with the Equal

Employment Opportunity Commission (EEOC) in July 2018.   (*Id.* ¶ 14).   On September 19, 2018, the EEOC issued a Dismissal and Notice of Rights (right-to-sue notice), and on December 7, 2018, Moore filed a *pro se* complaint in this court, to which the Clerk of Court assigned Case No. 5:18-cv-02016-MHH ("the 2018 case").   (*Id.* ¶¶ 15-16; Doc. 1 in Case No. 5:18-cv-02016-MHH).   Moore later retained counsel in the 2018 case, and her attorney filed an Amended Complaint (Doc. 27 in Case No. 5:18-cv-02016-MHH) and Second Amended Complaint (Doc. 37 in Case No. 5:18-cv-02016-MHH), asserting claims for sexual harassment, retaliation, and hostile work environment.

In the present case, Moore alleges she has "repeatedly experienced retaliation on a regular basis" since filing the 2018 case.   (Doc. 3, ¶ 17).   She alleges that on April 7, 2020, she submitted a "Phoenix MVR [(Motor Vehicle Record)] request form" for permission to drive her private vehicle, rather than a company vehicle, during the COVID-19 pandemic.   (*Id.* ¶¶ 18-19).   The form required her to list all moving violations and motor vehicle accident information for the previous three years.   (*Id.* ¶ 19).   She could not recall all the details of her driving history, so she left the form blank "because she knew that Phoenix would access her MVR report and gain those details." (*Id.* ¶ 20).   The MVR report Phoenix obtained revealed that Moore had two speeding violations and a motor vehicle accident during the previous three years.   (*Id.* ¶ 21).

On April 20, 2020, Moore received a Step 4 Discipline Suspension Notice for

falsifying a Phoenix record.  (*Id.* ¶ 22; Doc. 3-6, at 2).  The Notice stated:

> The reason for this Step Four (4) discipline is as follows.  You were previously engaged in several incidents of dishonesty and falsification of information on company documents (failure to notify Phoenix upon receipt of a significant payroll over payment, providing misleading information to Phoenix concerning return of the overpayment, failure to return the overpayment after agreeing to return the money, and omission of information regarding your driving record on a document that you signed on April 12, 2018).  As summarized below, you have again engaged in the same type of unacceptable behavior:
>
> - On April 7, 2020, you completed and signed a Phoenix form requesting to be granted company driving privileges.  On that form you answered "No" to the question as to if there was any reason you would not be able to drive a company vehicle.  You also answered "No" to the question regarding if you had received a ticket for a moving violation in the last three years.  However, when the motor vehicle record was checked, the report indicated the following:
>
>   o Incident Date:  02-04-2020, Conviction Date:  02-21-2020, Description:  Speeding
>
>   o Incident Date:  02-20-2018, Conviction Date 03-29-2018, Description:  Speeding
>
>   o Accident – Incident Date:  08-16-2017.
>
> This repeat of the behavior constitutes a pattern of very serious offenses and has brought us to this point in your employment.  This events [*sic*] are indicative of your continuing unprofessional behavior and are detrimental to Phoenix's ability to care for our valued employees, and to carry out our mission.  This risks [sic] of allowing you to drive based on falsified information could have catastrophic impact to the safety of Phoenix employees and the public at large as well as monumental economic impact to Phoenix.  Your entire work record, along with this

3

history of repeated similar events has been taken into consideration in reaching my decision regarding this disciplinary action.

Even though any of these events could be the basis of significant discipline, up to and including termination, it is understood that during these crisis times, loss of your job could have catastrophic impact on your livelihood and wellbeing. I am thus choosing to issue a Step 4 Disciplinary Action which per policy has a mandatory one week suspension. Again during this crisis time, we are waiving the suspension to allow you to continue working with no interruption.

(Doc. 3-6, at 2).

Moore alleges the Step 4 Discipline Suspension Notice falsely states she submitted the Phoenix MVR Form for permission to drive a company vehicle, when she actually requested to drive her personal vehicle. She also disputes Phoenix's account of the past payroll overpayment, as she alleges she repaid all the money she owed. (Doc. 3, ¶ 23). Moore submitted a response to the Step Four Discipline Notice on April 20, 2020, but she never received a reply from Phoenix. (Doc. 3, ¶¶ 24, 30; Doc. 3-7). She disputes that she intentionally falsified the MVR Form, as she did not recall the details of her driving record, and she relied upon Phoenix to obtain the record on its own. (Doc. 3, ¶ 27).

Moore alleges a co-worker, LaToya Taylor, also erroneously failed to list all past traffic violations on her Phoenix MVR form, but Phoenix did not reprimand Taylor, and it allowed Taylor to drive her personal vehicle despite the deficiencies on the form.

(*Id.* ¶¶ 25-26).  Moore claims Phoenix issued her the Discipline Notice in retaliation for her previous EEOC Charges and for filing the 2018 case.  (*Id.* ¶¶ 31, 33-38).

On October 16, 2020, Moore filed an EEOC charge addressing the allegedly retaliatory suspension from April 20, 2020.  (Doc. 3-1).  On October 28, 2020, the EEOC issued a right-to-sue notice.  (Doc. 3-2).[1]  Moore filed this case on January 27, 2021.  (Doc. 1).

## PROCEDURAL HISTORY OF THIS CASE AND THE 2018 CASE

On April 1, 2021, Phoenix filed its motion to dismiss this case, asserting the doctrine preventing claim-splitting precluded Moore's present claims in light of the claims she already asserted in the 2018 case.  (Doc. 10).  On April 15, 2021, Moore filed a response to the motion to dismiss (Doc. 17), and on April 22, 2021, Phoenix filed a reply.  (Doc. 18).

On September 28, 2021, Moore filed her motion for leave to file a Second Amended Complaint (Doc. 21).  She seeks to add a new claim for disability discrimination pursuant to the Americans with Disabilities Act (ADA), and to assert

---

[1] If documents attached to a complaint or filed in conjunction with a motion to dismiss are central to the complaint and not in dispute, a court may consider such documents without converting the dismissal motion to a summary judgment entreaty. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).  Because the Step 4 Discipline Suspension Notice, Moore's response to the Notice, Moore's EEOC charge, and the EEOC's right-to-sue notice all are central to Moore's claims, and neither party disputes their contents, the court will consider those documents.

5

additional factual allegations regarding her Title VII retaliation claim, including that, in

retaliation for filing previous EEOC charges, she

> was denied the opportunity to drive her personal vehicle to the work site
> and was singled out for waiting in said personal vehicle for her shift to
> begin; placed in physical danger by her team lead, Diann Moss, as she
> drove recklessly with Ms. Moore as a passenger in the company van; and
> a conversation with her supervisor, Ms. Hames[,] was not accurately
> reported.

(Doc. 21-1, ¶ 45).

On October 11, 2021, Phoenix opposed Moore's motion, asserting that allowing

the amendment would constitute an exercise in futility as Moore did not timely request

leave to amend vis-à-vis issuance of the right-to-sue notice regarding the amendment's

averments. (Doc. 23). Moore did not file a reply in support of her Motion, though the

court permitted her to do so within seven (7) days of the response's filing. (Doc. 22).

Later on September 28, 2021, the presiding District Judge over the 2018 case

granted summary judgment in favor of Phoenix and entered a final order dismissing all

of Moore's claims. (Docs. 67-68 in Case No. 5:18-cv-02016-MHH). Moore did not

appeal the District Judge's decision.

On October 20, 2021, Phoenix filed a Supplement to its motion to dismiss in

this action. In the Supplement, Phoenix asserts that the accordance of summary

judgment in the 2018 case precludes Moore's present retaliation claim due to the

doctrines of collateral estoppel and res judicata. (Doc. 26). Moore did not respond to

Phoenix's supplemental brief, though the court granted her permission to do so within ten days of its filing.  (Doc. 25).

## DISCUSSION

I.    **As Moore Did Not Effectively Attempt to Assert Legal Claims Within 90 Days of Presumptively Receiving the June 23, 2021 Right-To-Sue Notice, Title VII's Time Bar Precludes Her New Claims, and Further Amending Her Complaint Would Constitute an Exercise in Futility**

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings. Absent circumstances not relevant here,[2] a party may amend the pleadings only by leave of the court or the adverse party's written consent. *See* Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires." *Id.*  Unless a substantial reason exists to deny leave to amend, "the discretion of the District Court is not broad enough to permit denial." *Fla. Evergreen Foliage v. E.I. DuPont De Nemours and Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006) (internal quotations omitted).  A court may reject an amended pleading due to the moving party's undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by prior amendments, or where allowing the amendment would cause undue prejudice to the opposing party. *See Halpin v. Crist*, 405 F. App'x 403, 408-09 (11th Cir. 2010) (quoting *Corsello v. Lincare, Inc.*, 4287 F.3d 1008, 1014 (11th Cir. 2005)).

---

[2] A party may amend its pleading once as a matter of course within 21 days after serving it, or within 21 days after an opposing party serves a required responsive pleading or motion. Fed. R. Civ. P. 15(a)(2).

In addition, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Futility ensues "when the complaint as amended is still subject to dismissal." *Hall,* 367 F.3d at 1263 (citing *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999) (citation omitted). Courts routinely dismiss amended complaints as futile when proposed new claims run afoul of a statute of limitations. *See Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (denying amendment as futile because statute of limitations expired); *Presnell v. Paulding Cnty., Ga.*, 454 F. App'x 763, 768 (11th Cir. 2011) (holding that the district court did not abuse its discretion in denying Plaintiff's motion to add the new parties, as the claims would have been barred by the statute of limitations, and thus the amendment was futile); *Adams v. Kellett*, 360 F. App'x 67, 70 (11th Cir. 2010) ("[E]ven if Plaintiffs had followed the proper procedures in seeking leave to amend, such an amendment would have been futile because the claims that Plaintiffs seek to add would also be time-barred."); *Foster v. State Auto Property and Casualty Company*, No. 2:09-cv-0620-SLB, 2010 WL 11561710, at *1 (N.D. Ala. Mar. 14, 2010) ("In denying Foster's Motion to Amend the Complaint, the court found that the proposed claims were barred by the applicable statute of limitations, and therefore futile.").

Phoenix asserts Moore's proposed amendment would constitute an exercise in futility because Moore seeks to add claims that would fall prey to the time bars of Title

VII and the ADA.

> An employee must exhaust administrative remedies before filing a complaint of discrimination under Title VII of the Civil Rights Act and Title I of the Americans with Disabilities Act. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (Title VII); *see Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (Americans with Disabilities Act). "The first step down th[e] path [to exhaustion] is filing a timely charge of discrimination with the [Equal Employment Opportunity Commission (EEOC)]." *Wilkerson*, 270 F.3d at 1317. If the Commission determines after an investigation "that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify" the employee. 42 U.S.C. § 2000e-5(b). When the employee receives a notice of dismissal from the Commission, she has 90 days to file a civil action against the employer. *Id.* § 2000e-5(f)(1).

*Stamper v. Duval Cty. Sch. Bd.*, 863 F.3d 1336, 1339-40 (11th Cir. 2017) (first and second alterations in original, third alteration supplied); *see also Santini v. Cleveland Clinic Fla.,* 232 F.3d 823, 825 (11th Cir. 2000) ("Title VII . . . actions may not be brought more than 90 days after a complainant has adequate notice that the EEOC has dismissed the Charge.") (citing *Zillyette v. Capital One Fin. Corp.,* 179 F.3d 1337, 1339-41 (11th Cir. 1999)); *Zillyette,* 179 F.3d at 1339 ("It is settled law that, under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII of the Civil Rights Act of 1964.").

On June 14, 2021, Moore filed an EEOC charge addressing the allegations she raises in her proposed Second Amendment Complaint. That charge states:

> I am an individual with a disability. I was hired by [Phoenix] in December 2017, as a Custodian. I perform my job in a satisfactory manner.

On October 16, 2020, I filed a charge of discrimination . . . based on retaliation.  I believe since [I] filed the charge of discrimination, Assistant Supervisor, Roy Whitworth began harassing me about sitting in my own vehicle during the COVID-19 pandemic.  Supervisor Dorothy Cobb sided with Mr. Whitworth by telling me that I can no longer sit on [*sic*] my vehicle.  Some custodians could drive their own personal vehicle and others were not[ allowed to].  I had been discriminated against by Jenifer Hames by breaking confidentiality, but she didn't report that I told her on several occasions that the lead Diann Moss has driven off with me entering or standing in the doorway of the Phoenix Company Van and she hit a parked Phoenix Van while two employees were still present and she almost sided [*sic*] swiped Government Worker Truck.  I believe I have been singled out for filing a charge of discrimination in the past.

I believe I have been discriminated against [because of] my disability and retaliated against in violation of the Americans with Disabilit[ies] Act of 1990, as amended.

(Doc. 21-3, at 2-3).

The EEOC issued a digitally signed and dated right-to-sue notice for that charge on June 23, 2021.  (*See* Doc. 35, at 1).  Based upon the digital signature, the EEOC may have electronically transmitted the notice to Moore or her attorney on June 23, 2021. *See Robbins v. Vonage Bus., Inc.*, 819 F. App'x 863, 867 n.5 (11th Cir. 2020) (citations omitted) ("Receipt" of a right-sue-notice, for purposes of commencing the 90-day filing period, "may be by the plaintiff, the plaintiff's counsel, or counsel's law office."). However, Moore avers in her proposed Second Amended Complaint that she received the right-to-sue notice "on *or about* June 23, 2021," indicating equivocation regarding the receipt date.  (Doc. 21-1, ¶ 12 (emphasis added)).  As uncertainty remains regarding

the exact date on which Moore received the notice, the court applies "a presumption of three days for receipt by mail, akin to the time period established in Fed. R. Civ. P. 6(e)." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005) (quoting *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 404 (5th Cir. 1974), *rev'd on other grounds,* 424 U.S. 747 (1976)); *see also id.* at 953 n.9 (citing *Zillyette*, 179 F.3d at 1342).

Pursuant to this presumption, Moore would have received the right-to-sue notice on June 26, 2021, three days after the EEOC issued it. Thus, she needed to file a judicial claim based upon the allegations the right-to-sue notice addressed by September 24, 2021, 90 days later. On that date, she filed a Second Amended Complaint without first seeking leave of court or Phoenix's consent. (Doc. 19). On September 27, 2021, the court struck that pleading for failure to comply with the requirements of Federal Rule of Civil Procedure 15(a). (Doc. 20).

Moore's September 24, 2021, Second Amended Complaint did not constitute a timely filing because it lacked any legal effect. The Eleventh Circuit has held that an amended pleading filed without leave of court when Rule 15 requires such leave constitutes a "nullity." *Hoover v. Blue Cross & Blue Shield of Alabama*, 855 F.2d 1538, 1544 (11th Cir. 1988). The Court in *Hoover* relied heavily upon the following passage from the Wright & Miller treatise:

> In general, if an amendment that cannot be made as of right is
> served without obtaining the court's leave or the opposing party's consent,
> it is without legal effect and any new matter it contains will not be

considered unless the amendment is resubmitted for the court's approval. However, some courts have held that an untimely amended pleading served without judicial permission may be considered as properly introduced when leave to amend would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change.

*Hoover*, 855 F.2d at 1544 (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1484 at 421 (1971) [now 6 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1484 (3d ed. 2018)]).

The Fifth Circuit reached a similar decision in *U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293 (5th Cir. 2003), after confronting circumstances similar to those presented here.  In *Mathews*, the plaintiff had filed an amended complaint lodging state law claims for wrongful termination and age discrimination.  After receiving a deficiency notice noting the failure to request leave of court to file the pleading, the plaintiff filed such a request seven days after the erroneous filing.  *HealthSouth*, 332 F.3d at 294.  As the statute of limitations for the age discrimination claim had expired on August 4, 1999, the Fifth Circuit assessed whether the plaintiff filed the claim on August 2, 1999, when he improperly submitted an amended complaint without leave of court, or on August 9, 1999, when the court granted his request for leave to amend.

Relying upon the same language from the Wright & Miller treatise cited by the Eleventh Circuit in *Hoover,* the Fifth Circuit found that the plaintiff's amended pleading lacked legal effect because he needed, but did not obtain, the court's permission before

filing it.   "Without legal effect, [the amended pleading] cannot toll the statute of limitations period." *HealthSouth,* 332 F.3d at 296.

The court finds the Fifth Circuit's decision persuasive and in accord with Eleventh Circuit precedent. As in *HealthSouth*, Moore did not seek leave to file the Second Amended Complaint until September 28, 2021, more than 90 days after her presumptive receipt of the EEOC's right-to-sue notice.   The Second Amended Complaint Moore attempted to file on September 24 lacked any legal effect, and therefore could not toll the limitations period, because she did not seek leave of court before filing it.   Furthermore, the exception Professors Wright and Miller discuss does not apply here.   Phoenix would suffer undue prejudice by losing its limitations defense if the court excuses Moore's failure to file an appropriate motion to amend pleadings, especially in the absence of any reasons proffered by Moore for the failure.

The court observes that equitable tolling principles apply to Title VII and ADA filing requirements.   *See Stamper*, 863 F.3d at 1342 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Zillyette*, 179 F.3d at 1342) ("The timely-filing requirements of Title VII of the Civil Rights Act and Title I of the Americans with Disabilities Act are non-jurisdictional and subject to equitable tolling.").   Equitable tolling generally excuses a plaintiff's failure to exhaust administrative remedies "(1) when a state court action is pending; (2) when the defendant has concealed facts supporting a cause of action under Title VII; and (3) when the defendant misled the

plaintiff about the nature of her rights under Title VII." *Davis v. Auburn Bank*, 704 F. App'x 837, 841 (11th Cir. 2017) (citing *Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir. 1986)).

Equitable tolling does not ease the exhaustion requirement "when the claimant fails to exercise due diligence." *Howell v. Dep't of the Army*, 975 F. Supp. 1293, 1301 (M.D. Ala. 1997). Here, neither the existing nor proposed amended pleadings reveal a basis for extending equitable tolling to Moore's untimely filing of the Second Amended Complaint. *See Murphree v. Comm'r*, 644 F. App'x 962, 967 (11th Cir. 2016) ("The plaintiff bears the burden of showing that equitable tolling is warranted. . . . In general, the plaintiff must show that, despite exercising due diligence, an inequitable event prevented him from complying with the time limit.").

Because Moore did not effectively attempt to assert legal claims in this action within 90 days of presumptively receiving the EEOC's right-to-sue notice, and no equitable exception excuses the late filing, the claims she proposes in her Second Amended Complaint do not satisfy the timely filing requirements of Title VII and the ADA, and they could not succeed. Because filing the Second Amendment Complaint would constitute an exercise in futility, the court **DENIES** Moore's motion for leave to amend.

## II.     Collateral Estoppel Precludes Moore's Retaliation Claim

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint if it fails to state a claim for which relief may be granted.  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court revisited the applicable standard governing Rule 12(b)(6) motions to dismiss.  First, courts must take note of the elements a plaintiff must plead to state the applicable claims at issue.  *Id.* at 675.

After establishing the elements of the claim at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity. *Id.* at 679.   Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action.  *Id.* at 678 (citations omitted). In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor.  *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements.  *Iqbal*, 556 U.S. at 678.  Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense."  *Id.* at 678, 679 (citations

omitted).  The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are "merely consistent with a defendant's liability."  *Id.* at 678, 679 (citations omitted).

As the court denied Moore's motion for leave to file a Second Amended Complaint, the Amended Complaint remains the operative pleading, and the court will address Phoenix's motion to dismiss that pleading.  Because Moore charged the April 20, 2020, Step 4 Discipline Suspension Notice as a retaliatory act in both this case and in the 2018 case, Phoenix originally argued that the claim-splitting prohibition precluded the retaliation claim in Moore's Amended Complaint.

After the District Judge entered a final summary judgment in the 2018 case, Phoenix argued in its Supplement that the doctrine of collateral estoppel, or issue preclusion, bars Moore's retaliation claim in this case.  As elaborated below, that argument succeeds.[3]

---

[3] The court will not consider the alternative argument lodged in the Supplement that res judicata bars the claim in lieu of the claim-splitting doctrine.

The claim-splitting doctrine: (1) "requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit," and (2) applies where a second suit has been filed before the first suit has reached a final judgment. *Vanover v. NCO Fin. Servs., Inc.,* 857 F.3d 833, 840 n.3, 841 (11th Cir. 2017) (quoting *Katz v. Gerardi,* 655 F.3d 1212, 1217 (10th Cir. 2011)).  The doctrine serves "to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket." *Id.* at 843.

In determining whether a party has improperly split its claims among lawsuits, this Court examines: "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of

"Collateral estoppel 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,

---

transactions." *Id.* at 841-42 (quotation marks omitted). "Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Id.* at 842.

*Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021).

Courts analyze claim-splitting "as an aspect of res judicata or claim preclusion." *Vanover*, 857 F.3d at 841 (citations omitted). However, one important distinction exists between the two doctrines: "[w]hile claim-splitting and res judicata both promote judicial economy and shield parties from vexatious and duplicative litigation, 'claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments.'" *Id.* (quoting *Katz*, 655 F.3d at 1218). Thus, claim-splitting "applies only 'where a second suit has been filed before the first suit has reached a final judgment.'" *Watkins v. Elmore*, 745 F. App'x 100, 104 n.2 (11th Cir. 2018) (quoting *Vanover*, 857 F.3d at 840 n.3).

In accordance with these principles, after the District Judge entered a final summary judgment in the 2018 case, Phoenix supplemented its motion to dismiss to request dismissal of the retaliation claim in this case based upon res judicata rather than claim-splitting. S*ee Julian Depot Miami, LLC v. Home Depot U.S.A., Inc.*, No. 19-22838-CIV, 2019 WL 4599835, at *2 (S.D. Fla. Sept. 23, 2019), *appeal dismissed sub nom. In re Julian Depot Miami, LLC*, No. 19-14223-AA, 2020 WL 6301356 (11th Cir. Sept. 4, 2020) ("This Court entered a final judgment in the prior suit . . ., and thus the Court need not analyze whether this suit is barred by improper claim splitting. . . . Instead, the Court will determine whether this suit is barred by res judicata."); *McQueen v. Alabama Dep't of Transportation*, No. 2:17-CV-215-TFM, 2018 WL 2709319, at *7 (M.D. Ala. June 5, 2018) ("At the outset, when *McQueen II* was originally filed on April 12, 2017, *res judicata* would not have applied as *McQueen I* was still pending. So without a final judgment, *res judicata* could not have applied at that time and claim-splitting would have been the more appropriate analysis. However, shortly thereafter on June 30, 2017, Judge Baker entered a final judgment on the merits of McQueen's claims in the first case ruling in favor of the Defendants (to include ALDOT). As such, while the Court could have analyzed it in the context of claim-splitting under *Vanover*, the Court will now view *McQueen II* through the lens of *res judicata*."); *Gadsden Indus. Park, LLC v. United States*, No. 4:15-CV-0956-JEO, 2017 WL 4387217, at *8 (N.D. Ala. Oct. 3, 2017), *aff'd*, 756 F. App'x 945 (11th Cir. 2018) (After the presiding judge dismissed the earlier, related case, it would "make[] little sense for this court to ask whether this suit 'would be' precluded as *res judicata* by the [earlier] Case, 'assuming it were final,' as the court would do in a claim-spitting inquiry under *Vanover*. Rather, since the [earlier] Case is, in fact, final, it is more appropriate, from a procedural perspective, simply to ask whether GIP's claims in this action against the Contractors are barred by *res judicata itself*.") (emphasis in original).

However, as alluded, the court deems collateral estoppel the more applicable doctrine to the circumstances at bar.

even if the issue recurs in the context of a different claim.'" *F.T.C. v. Nat'l Urological Grp., Inc.*, 785 F.3d 477, 481-82 (11ᵗʰ Cir. 2015) (quoting *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008)).  Courts apply collateral estoppel when:

> (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Nat'l Urological Grp.,* 785 F.3d at 482 (citing *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC,* 702 F.3d 1312, 1318 (11ᵗʰ Cir. 2012)).

Moore's Second Amended Complaint in the 2018 case did not mention the April 2020 suspension notice, as the suspension notice occurred after Moore filed that pleading.  (*See* Doc. 38 in Case No. 5:18-cv-02016-MHH).  However, Phoenix devoted approximately one page of its September 11, 2020, summary judgment brief in the 2018 case to discussing the facts related to the April 2020 suspension notice.  (Doc. 53 in Case No. 5:18-cv-02016-MHH, at 15).  In the argument section of that brief, Phoenix summarized Moore's retaliation claim as follows:  "Ms. Moore contends Phoenix retaliated against her for filing a Charge of Discrimination by writing her up about her job performance, denying her new uniforms and Ms. Fitzsimmons's mother intimidating her by looking at her as they walked in the bathroom."  (Doc. 53 in Case No. 5:18-cv-02016-MHH, at 22).  Phoenix appended a footnote to that sentence,

stating:

> Ms. Moore's April 2020 Step 4 Discipline postdated her Complaint and her deposition in this matter.  To the extent Ms. Moore argues this discipline was retaliatory in nature, that argument fails for several reasons.  There is no temporal proximity between her alleged protected activity, i.e. the filing of her Charges in July 2018 and August 2018 and her April 2020 discipline, more than a year and a half later. . . . .  Further, even though the Step 4 Discipline was issued to her, it had no adverse effect on Ms. Moore.  While it provided for a five-day suspension, Phoenix waived that suspension. . . .  Ms. Moore remained in her position and did not lose pay. . . . A note in her personnel file without any tangible effect on Ms. Moore's employment can hardly be considered an adverse action. . . .  She also cannot refute that she fully understood that her commission of such a violation would warrant discipline since she had already been disciplined for the same violation two years earlier.[4]

(Doc. 53 in Case No. 5:18-cv-02016-MHH, at 22 n.5 (citations omitted)).

In Moore's October 25, 2020, summary judgment response brief in the 2018 case, she devoted approximately two pages to describing her version of the facts related to the April 2020 suspension.  (Doc. 57 in Case No. 5:18-cv-02016-MHH, at 14-16, ¶¶ 61-69).  Moore also listed a "Step 4 Discipline Form" on the list of evidence she submitted in response to summary judgment, but she did not actually file a copy of the form.  (Docs. 57-1 & 58-1 in Case No. 5:18-cv-02016-MHH).  However, she did submit an affidavit, in which she declares that after she filed charges of discrimination in 2018, Phoenix denied her "the opportunity to drive my private vehicle during the outbreak

---

[4] To support a Title VII retaliation claim, a plaintiff must show "(1) that 'she engaged in statutorily protected activity,' (2) that 'she suffered an adverse action,' and (3) 'that the adverse action was causally related to the protected activity.'" *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020).

of the COVID-19 pandemic." (Doc. 58 in Case No. 5:18-cv-02016-MHH, at 12, ¶ 61).

The next approximately two and one-half pages of the affidavit describe the

circumstances of the April 2020 suspension. (*Id.* at 12-14, ¶¶ 61-72). Moore did not

offer any substantive argument regarding the 2020 suspension; rather, in the argument

section of the brief, she stated Phoenix discriminated against her by "singling her ou[t]

and writing her up for job performance; (2) denying her new uniforms at her work

anniversary; and (3) attempted intimidation by Ms. Fitzsimmons' mother, a Phoenix

assistant supervisor." (Doc. 57 in Case No. 5:18-cv-02016-MHH, at 23).

In its October 29, 2020, reply brief in the 2018 case, Phoenix asserted Moore

failed to present any evidence she suffered an adverse employment action after

complaining about sexual harassment. Specifically, Phoenix stated:

> Ms. Moore's April 2020 discipline can also not be viewed as an
> adverse employment action. The discipline was not adverse because
> although she was issued a suspension, Phoenix waived it. As such, it had
> no effect on Ms. Moore's employment. A note in her personnel file
> without any tangible effect can hardly be considered an adverse action. . .
> .

(Doc. 63 in Case No. 5:18-cv-02016-MHH, at 16) (citations omitted). In a footnote,

Phoenix also reiterated that even if the April 2020 suspension did constitute an adverse

employment action, Moore's "protected activities are far too remote from the discipline

to be considered causally related." (*Id.* at 17 n.4).

As recounted previously, on September 28, 2021, the District Judge granted

Phoenix's motion for summary judgment in the 2018 case. The District Judge summarized Moore's allegations of retaliation as follows:

> Ms. Moore says Phoenix retaliated against her after she reported Ms. Fitzsimmons's conduct to HR and filed her first EEOC charge of discrimination on July 12, 2018. . . . She contends that Phoenix was slow to respond to her allegations and "was slow to take any corrective action." . . . According to Ms. Moore, the company's response "constructively encouraged complaints to be lodged against [her] work performance and work ethic for actions that were not even part of her job assignment." . . . Ms. Moore also alleges that Phoenix denied her an annual uniform replacement. . . . Finally, she states that Ms. Fitzsimmons's mother, another Phoenix employee, attempted to intimidate her by "unnecessarily plac[ing] herself in very close proximity to Ms. Moore when they would cross paths. This intentional violation of her personal space caused Ms. Moore to feel anxious whenever it occurred."

(Doc. 66 in Case No. 5:18-cv-02016-MHH, at 21-22 (bracketed alterations in original)). The District Judge then found that none of that conduct constituted an adverse action that would dissuade a reasonable worker from complaining of discrimination, as a Title VII claim requires. (Doc. 66 in Case No. 5:18-cv-02016-MHH, at 22).

The District Judge similarly found that Moore's crew leader's alleged focus upon her job performance did not constitute a sufficiently adverse action, as Moore did not receive a write-up, suspension, pay cut, or other adverse consequences therewith, and she received above average performance reviews and a pay raise after the increased criticism commenced. She found Phoenix's alleged failure to replace Moore's work uniforms did not constitute a sufficiently adverse action, as Moore did not receive any disciplinary action for the state of her uniform, and company policy did not entitle

Moore to a replacement uniform.  Finally, the District Judge found Moore's interaction

with Ms. Fitzsimmons's mother did not constitute a sufficiently adverse action because

the mother did not have any supervisory or disciplinary authority over Moore.  (*Id.* at

23-26).

After reiterating her conclusion that "Ms. Moore has not provided evidence that

she suffered an adverse employment action," the District Judge stated in a footnote:

> In her summary judgment opposition brief, Ms. Moore relates an
> incident from April 2020 in which she submitted a Phoenix MVR request
> form for her to drive her own private vehicle to and from the job site due
> to the COVID-19 pandemic." . . .  Phoenix issued Ms. Moore a Step 4
> Discipline for falsifying a Phoenix record because it said she lied on her
> MVR form about her accident history. . . .  Ms. Moore acknowledges that
> Phoenix waived the discipline. . . .

(*Id.* at 27 and n.15).

As the briefing in the 2018 case reveals, the parties actually litigated the exact

same issue in the 2018 case as Moore raises in this case:  *i.e.,* whether Phoenix issued

Moore a Step 4 Discipline Suspension Notice on April 20, 2020, in retaliation for her

prior EEOC complaints and in violation of Title VII.  Moore, the party against whom

Phoenix asserts the preclusive effect of the District Judge's previous decision, had a full

and fair opportunity to litigate the issue in the 2018 case, as Moore submitted an

affidavit addressing the April 20, 2020, suspension, and she addressed the issue in her

summary judgment response brief.  *See Powrzanas v. Jones Util. & Contracting Co. Inc.*, 822

F. App'x 926, 928 (11th Cir. 2020) (quoting *Pleming v. Universal-Rundle Corp.*, 142 F.3d

1354, 1359 (11ᵗʰ Cir. 1998)) ("'When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated.'").

Moreover, the District Judge's determination of the issue in the 2018 case constituted a critical and necessary part of the judgment in that action. *See Bobby v. Bies*, 556 U.S. 825, 835 (2009) ("A determination ranks as necessary or essential only when the final outcome hinges on it."). Even though the District Judge placed the discussion of the April 20, 2020, suspension in a footnote, she affixed the footnote at the end of an analysis concluding that other employment decisions and conduct by Phoenix did not constitute adverse actions. That the District Judge emphasized Moore's acknowledgement of Phoenix's waiver of the suspension indicates the suspension waiver influenced her decision. Unquestionably, she would have reached a different conclusion if Phoenix actually implemented the suspension. Therefore, the judgment in the 2018 case would have varied if the District Judge deemed the April 20, 2020, Step 4 Discipline Notice an adverse action.

In summary, the court finds the parties in the 2018 case actually and fully litigated whether Moore's April 20, 2020, suspension amounted to an adverse action, and the District Judge's determination of the issue constituted an essential part of her judgment in that case. Therefore, the District Judge's decision that the waived suspension did not present an adverse action that might dissuade a reasonable worker from complaining

23

about discrimination has preclusive effect, and Moore cannot relitigate the issue in this action.  For these reasons, the court **GRANTS** Phoenix's motion to dismiss Moore's retaliation claim.

## CONCLUSION

In accordance with the foregoing, as amendment would constitute an exercise in futility, the court **DENIES** Moore's motion for leave to further amend her Amended Complaint.  As collateral estoppel bars the existing retaliation claim in Moore's Amended Complaint, the court **GRANTS** Phoenix's motion to dismiss and **DISMISSES** of Moore's claims.  The court will enter a separate final judgment.

**DONE** this 5th day of January, 2022.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE